TRACTOR AND AUTO SUPPLY COMPANY, INC. v. FAYETTEVILLE TRAC-
TOR AND EQUIPMENT COMPANY, INC., ORIGINAL DEFENDANT, AND AD-
DITIONAL DEFENDANT FIRST-CITIZENS BANK & TRUST COMPANY

No. 6812SC358

(Filed 16 October 1968)

**1. Appeal and Error § 40— record on appeal**

The brief is not a part of the record on appeal. Rule of Practice in the
Court of Appeals No. 19.

**2. Pleadings § 32— motion to be allowed to amend**

A motion to amend, after the beginning of the trial, is addressed to the
discretion of the trial court, and its decision is not appealable.

**3. Receivers § 10— motion to amend proof of claim**

On hearing in the Superior Court upon exception of creditor-bank to re-
ceiver's report denying its claim for preference over unsecured creditors
in the distribution of the assets of an insolvent corporation, trial court
did not abuse its discretion in denying creditor's motion, which was made
more than two years after receiver's report and ruling, to amend its proof
of claim so as to allege the fraudulent issuance of checks by the corpora-
tion.

**4. Receivers § 10— time to file proof of claim**

The court has authority to limit the time within which creditors may
present and prove to the receiver their respective claims against the in-
solvent corporation and may bar all creditors and claimants failing to
do so within the time allotted from participating in the distribution of
the assets of the corporation. G.S. 1-507.6.

**5. Fraud § 1— elements of fraud**

The essential elements of fraud are: (1) that defendant made a repre-
sentation relating to some material past or existing fact; (2) that the
representation was false; (3) that when he made it defendant knew that
the representation was false, or made it recklessly, without any knowledge
of its truth and as a positive assertion; (4) that defendant made the
representation with intention it should be acted upon by plaintiff; (5)
that plaintiff reasonably relied and acted upon the representation; and
(6) that plaintiff thereby suffered injury.

**6. Fraud § 9— pleadings — failure to allege reasonable reliance**

In order to allege fraud by a corporation in knowingly issuing worthless
checks, creditor-bank's proof of claim against insolvent corporation in
receivership proceedings must allege as an element of fraud that the
creditor-bank reasonably relied upon some representation by the corpo-
ration.

**7. Receivers § 12— preference**

Preferences are not favored and can arise only by reason of some
definite statutory provision or some fixed principle of common law.

**8. Receivers § 12— nature of preferred claim**

A preferred claim is one which, because of some equity peculiar to it,

is granted preference over claims of the same class or an otherwise superior class of claims; it may be established or recognized by statute or, in some instances, it may be recognized and enforced by courts of equity independently of statute.

**9. Property § 2— possession of money — presumption of title**

The possession of money by a person, nothing else appearing, entitles a third person dealing with him, in the ordinary course of business, to assume that he has the title thereto.

**10. Trusts § 14— creation of constructive trust**

A constructive trust arises where a person holding title to property is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if he were permitted to retain it.

**11. Trusts § 14; Property § 2— constructive trust — fraudulent obtaining of money**

Corporation which obtained money from creditor-bank by knowingly issuing worthless checks *is held* to have acquired title to the money, but a constructive trust in the money arises in favor of the bank to prevent the unjust enrichment of the corporation and entitles the bank to follow the money wherever the bank can trace it and reclaim it from any person who has not given value in good faith therefor.

**12. Receivers § 12; Trusts § 14— creditor's claim for preference on ground money was fraudulently obtained**

Creditor-bank of insolvent corporation does not have a preferred claim against the insolvent's assets in the hands of a receiver on the ground that money obtained from the bank by the insolvent through the fraudulent issuance of worthless checks is now held by the receiver on a constructive trust, since the creditor neither alleged nor proved that the funds fraudulently obtained actually constitute part of the assets in the hands of the receiver.

**13. Receivers § 10— proof of claim in writing**

Claimant's proof of claim is required to be in writing. G.S. 1-507.6.

**14. Pleadings § 19— liberal construction of pleadings**

All pleadings shall be liberally construed with a view to substantial justice between the parties. G.S. 1-151.

**15. Appeal and Error § 26— exception to signing of the judgment**

An exception to the signing and entry of the judgment presents the face of the record proper for review and is limited to the question of whether error of law appears on the face of the record.

APPEAL by Additional Defendant First-Citizens Bank & Trust Company from *Braswell, J.*, 6 May 1968 Civil Session of Superior Court of CUMBERLAND County.

This case was consolidated in this Court for hearing with case

No. 6812SC359 entitled *First-Citizens Bank & Trust Company v. H. Dolph Berry, Receiver of Fayetteville Tractor and Equipment Company, Inc., et al.*

The following is stipulated:

"It is hereby stipulated and agreed that the Superior Court of Cumberland County, before which this action was held during its May 6, 1968, Civil Session, was duly and properly organized, commissioned and held; that the matters herein were heard by the court without a jury; that the receiver was duly appointed by the court and was directed by the court to defend this appeal; that the receiver does defend this appeal in the interest of all creditors of Fayetteville Tractor and Equipment Company, Inc.; that all creditors were duly served in this receivership action.

It is further stipulated that the record on appeal shall consist of so much of the record proper as pertains to the claim of the appellant First-Citizens Bank and Trust Company, . . ."

This suit was instituted by Tractor and Auto Supply Company, Inc., (Tractor and Auto) on 27 May 1967 against Fayetteville Tractor and Equipment Company, Inc. (Fayetteville Tractor). Plaintiff alleged Fayetteville Tractor was indebted to it in the sum of $8,-529.77. Fayetteville Tractor admitted the indebtedness in its answer and asserted that the defendant was unable to pay its debts in the ordinary course of its business. Defendant further requested that the court appoint receivers to liquidate the assets of the corporation as provided by law. By order dated 31 May 1965, H. Dolph Berry was appointed temporary receiver for the defendant Fayetteville Tractor, and the appointment was made permanent on 17 June 1965.

The appellant, First-Citizens Bank & Trust Company (First-Citizens), was made an additional party defendant in this action on 3 June 1965, upon motion of H. Dolph Berry, Receiver of Fayetteville Tractor and Equipment Company, Inc., along with over two hundred and ninety other persons and corporations. First-Citizens filed a Proof of Claim herein on 22 October 1965 in words as follows:

"M. J. McSorley, a cashier of First-Citizens Bank and Trust Company, being first duly sworn, deposes and says:

That Fayetteville Tractor and Equipment Company, Inc., is now justly indebted to First-Citizens Bank and Trust Company in the sum of Forty-Seven Thousand Five Hundred Sixty-Four and 79/100 Dollars ($47,564.79).

That said claim or indebtedness arose from Fayetteville Tractor and Equipment Company, Inc., making and delivering to Four County Tractors, Inc., a series of checks drawn on Southern National Bank of North Carolina and payable to the order of Four County Tractors, Inc., with the said checks being numbered, dated and in amounts as follows:

| Check Number | Date of Check | Amount |
|---|---|---|
| 12714 | 4/16/65 | $    8,961.15 |
| 12715 | 4/16/65 | 9,826.50 |
| 12716 | 4/17/65 | 7,316.20 |
| 12717 | 4/19/65 | 3,485.20 |
| 12718 | 4/20/65 | 7,129.86 |
| 13016 | 4/21/65 | 9,831.20 |
| 13017 | 4/22/65 | .10,061.87 |
| 13018 | 4/23/65 | 14,593.50 |
| 13019 | 4/19/65 | 7,122.60 |
| 13020 | 4/20/65 | 8,318.89 |
| 13021 | 4/21/65 | 9,062.30 |
| 13022 | 4/21/65 | 8,868.20 |
| 13023 | 4/22/65 | 9,389.08 |
| | Total | $113,966.55 |

The aforesaid checks totaling $113,966.55 were deposited by Four County Tractors, Inc., in a checking account maintained by the said Four County Tractors, Inc., at the Dunn, North Carolina, branch of First-Citizens Bank and Trust Company. The said checks were promptly forwarded by First-Citizens Bank and Trust Company to Southern National Bank of North Carolina on which they were drawn, but the said checks were returned to First-Citizens Bank and Trust Company unpaid. Upon notification that the Southern National Bank would not honor the aforesaid checks, First-Citizens Bank and Trust Company refused to allow further withdrawals by Four County Tractors, Inc., but the sum of $60,267.01 had already been paid out of the aforesaid account. The original indebtedness of $60,-267.01 was reduced to $47,564.79 by a series of setoffs.

That there are no offsets, credits, or counterclaims due to Fayetteville Tractor and Equipment Company, Inc., against the undersigned claimant:

That a copy of any unpaid checks or of any written documentation of this claim is attached hereto."

Under date of 16 December 1965, pursuant to the provisions of G.S. 1-507.7, H. Dolph Berry, Receiver of Fayetteville Tractor, reported to the Superior Court his findings on the claim of First-Citizens filed herein. The Receiver found as a fact and concluded as a matter of law that First-Citizens was a holder in due course of the checks listed in its Proof of Claim to the extent of $60,267.01 and allowed the claim of First-Citizens to the extent of $47,564.79. The Receiver also found that the claim was a general unsecured claim and denied the claim of First-Citizens for a preference in the payment thereof.

On 23 December 1965 First-Citizens excepted to the report of the Receiver wherein the Receiver found as a fact and concluded as a matter of law that the claim for the $47,564.79 was not a preferred claim and demanded a jury trial. The Superior Court by judgment entered as of 13 May 1968, after a hearing found:

"(1)   That First-Citizens Bank and Trust Company filed its proof of claim with H. Dolph Berry, Receiver of Fayetteville Tractor and Equipment Company, Inc., on October 22, 1965, as appears of record.

(2)   That H. Dolph Berry, Receiver of Fayetteville Tractor and Equipment Company, Inc., filed his report with this Court with respect to the claim of First-Citizens Bank and Trust Company on December 16, 1965, which report of the Receiver was referred to the January 3, 1966 Civil Session of the Superior Court of Cumberland County, North Carolina, which report appears of record.

(3)   That First-Citizens Bank and Trust Company on December 23, 1965, filed certain exceptions to the report of the Receiver, which written exceptions appear of record.

(4)   That First-Citizens Bank and Trust Company received the report of the said Receiver on December 21, 1965, and that the written exceptions of First-Citizens Bank and Trust Company thereto were filed within ten (10) days after notice of the findings by the Receiver.

(5)   That the written exceptions filed by First-Citizens Bank and Trust Company contain a demand for jury trial.

(6)   That no issues arise upon the written exceptions filed by First-Citizens Bank and Trust Company to be submitted to a jury.

(7)   That the conclusions of law as set forth by the Receiver

in his report on the claim of First-Citizens Bank and Trust Company are correct and are affirmed by the Court.

(8) That the claim of First-Citizens Bank and Trust Company in the amount of Forty-Seven Thousand Five Hundred Sixty-Four and 79/100 ($47,564.79) Dollars is a general unsecured claim against Fayetteville Tractor and Equipment Company, Inc., to be paid pro rata along with other general unsecured claims against said corporation.

(9) That the written exceptions filed by First-Citizens Bank and Trust Company to the report of the Receiver are overruled as a matter of law."

On the same date, 13 May 1968, the Superior Court, in the exercise of its discretion, denied the motion of First-Citizens for an order allowing it to amend its Proof of Claim previously filed so as to allege a fraudulent kiting of checks by Fayetteville Tractor.

First-Citizens excepts to the denial of its motion to amend and the entry of the judgment, assigns error, and appeals to the Court of Appeals.

*Jordan, Morris & Hoke by William R. Hoke for First-Citizens Bank & Trust Company, appellant.*

*J. Duane Gilliam for H. Dolph Berry, Receiver of Fayetteville Tractor and Equipment Company, Inc., appellee.*

MALLARD, C.J.

First-Citizens makes and brings forward four assignments of error as follows:

(1) "The Court erred in overruling the appellant's motion to amend its Proof of Claim so as to allege a fraudulent 'kiting' of checks by Fayetteville Tractor and Equipment Company, Inc."

(2) "The Court erred in failing to find as a fact that there are issues of fact which arise upon the written exceptions filed by the appellant. . . ."

(3) "The Court erred in concluding as a matter of law that the receiver's report on the claim of the appellant should be affirmed. . . ."

(4) "The Court erred in signing and entering the Judgment dated 13 May 1968, for that the Judgment contains errors on its face in that it is not properly supported by findings of fact and conclusions of law."

Auto Supply Co., Inc. v. Equipment Co., Inc.

### Motion to Amend

From this record, we do not know when or in what manner First-Citizens made its motion to amend. First-Citizens filed its Proof of Claim on 22 October 1965 after having been made an additional party defendant on 3 June 1965.

[1]   On 2 November 1965 the Receiver, in his answer in case No. 6812SC359, requested that plaintiff's complaint and amendment thereto be treated as a verified proof of claim in this case. First-Citizens did not join in this request and made no motion to amend until 13 May 1968, which is the same date that the Superior Court approved the report of the Receiver denying a preferential status to its claim. The order of Judge Braswell denying the motion to amend is dated 13 May 1968, but it was not filed until 15 May 1968. The following appears on page seven of appellee's brief:

> "The order of the trial Court in denying the motion of First-Citizens Bank and Trust Company *made orally at the hearing on May 13, 1968,* to amend its proof of claim, was fully justified in law and upon the facts and should be affirmed." (emphasis added)

It should be noted that a brief is not a part of the record on appeal. See Rule 19 of the Rules of Practice in the Court of Appeals. However, in view of the filing date and the date of the order, we assume that the motion to amend was made at the time appellee contends. On the record here, there is nothing to show when the motion was made. However, appellant says on page eleven of its brief that the motion was made after the trial court dismissed First-Citizens' action in No. 6812SC359, which occurred under date of 13 May 1968.

[2]   With respect to motions to amend, we find in 6 Strong, N. C. Index 2d, Pleadings, § 32, at page 356, the following:

> "The trial judge in term, in his discretion, may allow amendments.
>
> A motion to amend, after the beginning of the trial, is addressed to the discretion of the trial court, and its decision is not appealable. . . ."

[3, 4]   We are of the opinion that First-Citizens did not make timely motion to amend its proof of claim as a matter of right. Over two years had passed since the Receiver had ruled on the claim filed by First-Citizens. G.S. 1-507.6 authorizes the court to limit the time within which creditors may present and prove to the re-

ceiver their respective claims against the corporation and may bar all creditors and claimants failing to do so within the time allotted from participating in the distribution of the assets of the corporation. First-Citizens in its "Exception To Report of Receiver," dated 23 December 1965 asserts, among other things, that the "funds represented" by its claim were "wrongfully and unlawfully obtained" from First-Citizens. The record shows that the notice of the Receiver to present claims to him indicated that the court ordered that all claims must be presented on or before 1 November 1965, and upon a failure to do so the notice would be pleaded in bar thereof. The report of the Receiver on the claim of First-Citizens was made, as required by the statute, to the 3 January 1966 Civil Session of the Superior Court of Cumberland County. The record does not reveal what, if anything, was done about the report until 13 May 1968.

Under the circumstances of this case, we conclude that Judge Braswell did not abuse his discretion by refusing to permit First-Citizens to amend its Proof of Claim in the Superior Court on 13 May 1968, the date of the hearing on the report of the Receiver.

In its exception to the report of the Receiver dated 23 December 1965, First-Citizens contended that its claim was a preferred claim "for the reason that the funds represented by said claim were wrongfully and unlawfully obtained."

However, it does not assert therein any factual basis for its conclusion that the funds were wrongfully and unlawfully obtained, other than by the use of the checks as set out in its Proof of Claim.

First-Citizens' oral motion to amend on 13 March 1968 was, according to the order of Judge Braswell, "for an Order allowing it to amend its Proof of Claim previously filed herein so as to allege a fraudulent 'kiting' of checks by Fayetteville Tractor and Equipment Company, Inc." Even if such motion had been allowed, it could not have changed the result reached herein.

In connection with its motion to amend, appellant in its brief asserts:

"Although the receiver's answer in First-Citizens' action asked that the complete allegations of fraud as contained in the complaint be incorporated in First-Citizens' Proof of Claim in the instant receivership proceedings, the trial Court dismissed First-Citizens' action on the receiver's plea in bar and made no reference to such an incorporation. First-Citizens then moved the Court for permission to amend its Proof of Claim so as to in-

clude therein the complete allegations of the complaint, but the motion was denied. This denial by the Court is the basis of one of the appellant's exceptions in this appeal."

The record, as shown by appellant's assignment of error No. 1, does not support appellant's contention that its motion was for permission to include in its Proof of Claim the complete allegations of the complaint. However, even if such motion had been made, and allowed, it could not have changed the result reached herein.

## ISSUE OF FACT

Appellant contends that a liberal construction of the complaint filed in case No. 6812SC359, and the claim filed herein, reveals that it is based on a fraud perpetrated upon it by Fayetteville Tractor because Fayetteville Tractor caused the checks, which were worthless, to be put into circulation when it delivered them to Four County Tractors, Inc. (Four County).

[5] In *Cofield v. Griffin*, 238 N.C. 377, 78 S.E. 2d 131, the Supreme Court said that the essential elements of fraud are:

"(1) That defendant made a representation relating to some material past or existing fact; (2) that the representation was false; (3) that when he made it, defendant knew that the representation was false, or made it recklessly, without any knowledge of its truth and as a positive assertion; (4) that defendant made the representation with intention that it should be acted upon by plaintiff; (5) that plaintiff reasonably relied upon the representation, and acted upon it; and (6) that plaintiff thereby suffered injury."

The verified complaint alleges in substance that John A. McLamb, while acting as President of Fayetteville Tractor, signed the thirteen checks totaling $113,966.55 drawn on Southern National Bank in Fayetteville, payable to Four County. We assume, therefore, that he put these checks, knowing them to be worthless, into circulation by delivering them to himself in his capacity as President of Four County. Four County took these checks and deposited them to the account of Four County in First-Citizens' Dunn branch. Thereafter, checks by Four County were issued to Fayetteville Tractor and were paid by First-Citizens in the total sum of $50,963.18 before the checks of Fayetteville Tractor had been returned unpaid by Southern National.

[6] There is no allegation specifically or by inference in the claim filed herein, other than the issuance of checks, that First-Citizens

reasonably relied upon any representation by Fayetteville Tractor, which is one of the necessary elements of fraud. In fact, the allegations in the Proof of Claim are to the effect that Four County deposited the checks in a checking account it maintained in the Dunn branch of First-Citizens and that First-Citizens paid Four County's checks drawn on this deposit before it had collected the Fayetteville Tractor checks.

The allegations in the complaint in the other case, which is No. 6812SC359, were not and are not incorporated in appellant's Proof of Claim; however, we have carefully examined the complaint and the amendments thereto and do not find any specific allegation, or one by inference, that First-Citizens reasonably relied upon any representation of Fayetteville Tractor, one of the essential elements of fraud.

With respect to the element of reasonable reliance, Justice Sharp, in *Johnson v. Owens*, 263 N.C. 754, 140 S.E. 2d 311, said:

"Just where reliance ceases to be reasonable and becomes such negligence and inattention that it will, as a matter of law, bar recovery for fraud is frequently very difficult to determine. This case presents that difficulty. In close cases, however, we think that a seller who has intentionally made a false representation about something material, in order to induce a sale of his property, should not be permitted to say in effect, 'You ought not to have trusted me. If you had not been so gullible, ignorant, or negligent, I could not have deceived you.' Courts should be very loath to deny an actually defrauded plaintiff relief on this ground. When the circumstances are such that a plaintiff seeking relief from alleged fraud must have known the truth, the doctrine of reasonable reliance will prevent him from recovering for a misrepresentation which, if in point of fact made, did not deceive him. In such a case the doctrine is the specific remedy for a complainant who is, so to speak, malingering. A plaintiff who, aware, has made a bad bargain should not be allowed to disown it, no more should a fraudulent defendant be permitted to wriggle out on the theory that his deceit inspired confidence in a credulous plaintiff."

It is not necessary for decision herein, and we do not determine whether First-Citizens reasonably relied on the representation that the checks in question were drawn against sufficient funds or whether it was negligent under the circumstances to make payment to Fayetteville Tractor on the strength of the deposit by Four County of

the checks given to Four County by Fayetteville Tractor, because the decision herein turns on other questions of law.

First-Citizens contends in its brief that if it was permitted to prove that a fraud was perpetrated against it by Fayetteville Tractor and its president, McLamb, it would be entitled to a preferred claim against the assets of Fayetteville Tractor in the hands of the Receiver.

Let us assume it is a fact that a fraud was perpetrated upon First-Citizens and that $47,564.79 was wrongfully obtained from it by the giving of worthless checks by Fayetteville Tractor, its associates and agents.

No one, on this record, denies that First-Citizens has an action against Fayetteville Tractor and its associates and agents who engaged in such a fraud. The main question we are concerned with on this appeal is: Because of such fraud and deceit practiced upon it, does First-Citizens have a preferred claim against the assets of Fayetteville Tractor in the hands of the Receiver superior to the claims of ordinary unsecured creditors?

[7] "Preferences are not favored and can arise only by reason of some definite statutory provision or some fixed principle of common law." 6 Strong, N. C. Index 2d, Receivers, § 12, p. 602. In the present case the appellant has asserted no statutory provision that would entitle it to preferential treatment, but rather relies solely on equitable principles as the basis for its claim to a priority. The basis for the appellant's equitable claim is its contention that in its Proof of Claim it has alleged fraud on the part of Fayetteville Tractor, its agents and associates.

A preference is "the right held by a creditor, in virtue of some lien or security, to be preferred above others (*i.e.*, paid first) out of the debtor's assets constituting the fund for creditors." Black's Law Dictionary, 4th Ed.

[8] "A preferred claim is one which, because of some equity peculiar to it, is granted preference over claims of the same class or an otherwise superior class of claims. Such preferred claims sometimes are established or recognized by statute, but in some instances they have been recognized and enforced by courts of equity independently of statute. Indeed, their origin historically, as their name suggest, is equitable rather than statutory. Furthermore, their origin and development generally have occurred in connection with railroad and public utility operating receiverships. . . . For the most part, such preferred claims are based upon expenses of an operating re-

ceivership or liabilities arising in connection with such a receivership. . . ." 45 Am. Jur., Receivers, § 254.

First-Citizens did not in its complaint, the amendments thereto in case No. 6812SC359, in its Proof of Claim filed in this case, in its exceptions taken to the report of the Receiver on its claim, in its motion to amend, or in its brief filed herein, allege, assert, infer, or offer to prove that the assets of Fayetteville Tractor coming into the hands of the Receiver were composed of the proceeds received by Fayetteville Tractor from the checks in question or that such assets were in any way augumented by such proceeds.

Under the circumstances of this case, the only way First-Citizens could have a preferred lien would be by statute or by equity imposing such.

There is no statute in North Carolina which will give First-Citizens a preferred claim upon the facts in this case.

**[9, 10]**    First-Citizens in its brief contends that the title to the money has never passed, or, if it has passed, the money is held by the Receiver on a constructive trust. There can be no question that the possession of the money in this case, paid out on the checks, has passed. The possession of money by a person, nothing else appearing, certainly entitles a third person dealing with him, in the ordinary course of business, to assume that he has the title thereto.

"A constructive trust arises where a person holding title to property is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if he were permitted to retain it.

It is a 'fraud-rectifying' trust, created by a court of equity to prevent the unjust enrichment of the holder of a title. The court constructs a trust, makes the defendant a trustee without his consent, for the purpose of working out the ends of justice. It is not a permanent trust, in which the trustee is to have any duties of administration, but a passive, temporary trust, in which the trustee's sole duty is to transfer the title to the beneficiary." R. E. Lee, North Carolina Law of Trusts, (3rd Ed. 1968), § 13a, p. 76.

If the title to the money is still in First-Citizens as it states in one of its contentions, then First-Citizens has not asserted that the Receiver has any of its money. It simply asserts that Fayetteville Tractor is indebted to it on account of a fraud and that it is therefore entitled to have its claim of an indebtedness preferred over the claims of general creditors. However, the record in this case shows

that the Receiver received only $670.55 in cash or bank deposits as assets of the insolvent corporation, Fayetteville Tractor.

[11]    We are of the opinion that the title to the money was transferred to Fayetteville Tractor at the time it cashed the checks drawn on the bank account of Four County and that a constructive trust in the money arose in favor of First-Citizens to prevent the unjust enrichment of Fayetteville Tractor.

First-Citizens could have followed the money fraudulently obtained wherever they could trace it and reclaim it in the hands of any person who had not received it in good faith and given value therefor, on the ground that there was a constructive trust in the money in their favor. This was permissible because they would then be endeavoring to get their own money back. They have failed to do this. *Cunningham v. Brown,* 265 U.S. 1, 68 L. Ed. 873 (1924); 2 Banking Law Journal Digest, 6 Ed., Fraudulent Overdraft Transactions, § 1160, p. 775.

In the case of *In re Tate-Jones & Co.,* 85 F. Supp. 971 (W.D. Pa. 1949), a bankruptcy case, the general principle is stated:

"A person seeking to charge a fund in the hands of the trustee for the benefit of all creditors, as being the proceeds of his property and to have a special trust fund for him, has the burden of proof; and if he is unable to identify the product as representing the proceeds of his property, his claim must fall as all doubts must be resolved in favor of the trustee who represents all creditors."

In the case under consideration, there is no allegation or intimation as to what Fayetteville Tractor did with the money it received. Did it continue to operate its business with it? Did it pay it out on liens on part of its property? These, and many more questions are unanswered.

In the case of *Edwards v. Culberson,* 111 N.C. 342, 16 S.E. 233, Shepherd, C.J., in speaking on a constructive trust, says:

"Mr. Pomeroy says: 'In general, whenever the legal title to property, real or personal, has been obtained through actual fraud, . . . or through any other circumstances, which render it unconscientious for the holder of the legal title to retain and enjoy the beneficial interest, equity imposes a constructive trust on the property thus acquired in favor of the one who is truly and equitably entitled to the same, although he may never perhaps have had any legal estate therein, and a court of equity has jurisdiction to reach the property either in hands

of the original wrongdoer, or in the hands of any subsequent holder, until a purchaser in good faith and without notice, acquires a higher right and takes the property relieved from the trust.

The forms and varieties of these trusts, which are termed *ex maleficio* or *ex delicto,* are practically without limit. The principle is applied whenever it is necessary for the obtaining of complete justice, although the law may also give the remedy of damages against the wrongdoer.' Pom. Eq. Jur., 1053. . . . The trusts of which we are speaking are not what are known as technical trusts, and the ground of relief in such cases is, strictly speaking, fraud and not trust. Equity declares the trust in order that it may lay its hand upon the thing and wrest it from the wrongdoer. This principle is distinctly recognized by our leading text-writers, and is is said by Mr. Bispham (Principles of Equity, 92) that 'equity makes use of the machinery of a trust for the purpose of affording redress is (sic) cases of fraud.' "

In the case of *Speight v. Trust Co.,* 209 N.C. 563, 183 S.E. 734, the Supreme Court said:

"Equity applies the principles of constructive trusts wherever it is necessary for the obtaining of complete justice, although the law may also give the remedy of damages against the wrongdoer. Pomeroy Eq. Jur., sec. 1053; *Edwards v. Culberson,* 111 N.C. 342. The principle is stated in Pomeroy's Equity Jurisprudence that while ordinarily constructive trusts, properly so called, may be referred to what equity denominates fraud, actual or constructive, many instances spring from the violation of some fiduciary obligation, and in them 'there is, latent perhaps, but none the less real, the necessary element of that unconscientious conduct which equity calls constructive fraud.' Pom. Eq. Jur., sec. 1044.

The equitable doctrine of constructive trusts is fully discussed in two well considered opinions from this Court, one by Walker, J., in *Lefkowitz v. Silver,* 182 N.C. 348, and the other by Adams, J., in *Bryant v. Bryant,* 193 N.C. 372."

The cases cited by appellant in its brief are not inconsistent with the principle of law set forth in *Edwards v. Culberson, supra.*

In *The Tradesman's Bank and The Chemical Bank v. Merritt,* 1 Paige (N.Y.) 308 (1829), cited by appellant, the defendant depositor overdrew his bank account and deposited the money obtained in another bank. The Court held:

"If the money was fraudulently obtained from the complainants, as alleged in the bill, the property was not changed by paying it out on the draft, and they may follow it into the hands of any person who has not taken it in the course of business, and allowed an equivalent therefor, without notice of the fraud. The complainants are not creditors at large, but have a specific lien upon the fund in the case stated in the bill."

The specific lien refers to the *fund* in the case stated in the bill and does not contradict but supports the principle *that property fraudulently obtained can be followed* and recovered. Speaking on the question of tracing trust property, in the case of *Spokane County v. First Nat. Bank,* 68 Fed. 979 (9th Cir. 1895), the Court said:

" 'We are unable to assent to the proposition that, because a trust fund has been used by the insolvent in the course of his business, the general creditors of the estate are by that amount benefited, and that, therefore equitable considerations require that the owner of the trust fund be paid out of the estate to their postponement or exclusion. * * * Both the settled principles of equity and the weight of authority sustain the view that the plaintiff's right to establish his trust and recover his fund must depend upon his ability to prove that his property is in its original or a substituted form in the hands of the defendant.' "

[12]     In the case under consideration, there is no allegation or attempt to follow the fund alleged to have been fraudulently obtained. Perhaps it cannot be done. Perhaps it was paid out to persons in the course of business, who took it without notice of fraud and therefore cannot be traced. Certainly First-Citizens is entitled to its money, but under the facts in this case, we cannot hold that the other creditors of Fayetteville Tractor should be penalized by permitting First-Citizens to have a preferred claim on the assets in the hands of the Receiver in the absence of an allegation and showing that funds fraudulently obtained from First-Citizens actually constitute a part of the assets coming into the hands of the Receiver.

[13, 14]     Appellant's Proof of Claim filed herein is its pleading in this case, which under G.S. 1-507.6, is required to be in writing. Under our applicable statute, all pleadings shall be liberally construed with a view to substantial justice between the parties. G.S. 1-151.

When so construed and in view of the foregoing principles of law and the findings by the trial court that First-Citizens is an unsecured creditor in the amount of $47,564.79, we conclude as a matter of law

that the pleadings do not raise an issue of fact which has been found against First-Citizens requiring submission to a jury. When the judge of Superior Court had awarded First-Citizens all it was entitled to under the facts, there was no issue raised for submission to a jury.

### AFFIRMATION OF RECEIVER'S REPORT

G.S. 1-507.7 requires, among other things, a receiver "to report to the term of the superior court subsequent to a finding by him as to any claim against the corporation." The Receiver complied with this provision on 16 December 1965 by reporting to the 3 January 1966 Civil Session of Superior Court of Cumberland County his finding with respect to the claim of First-Citizens. When this report was heard in the Superior Court by Judge Braswell on 13 May 1968, he correctly overruled, as a matter of law, the exceptions filed by First-Citizens to the report of the Receiver and correctly ordered that the claim of First-Citizens is a general unsecured claim against the assets of Fayetteville Tractor. The trial court did not commit error in concluding as a matter of law that the Receiver's report on the claim of First-Citizens should be affirmed.

### SIGNING AND ENTRY OF THE JUDGMENT

[15] This is a formal exception which presents the face of the record proper for review and is limited to the question of whether error of law appears on the face of the record. 1 Strong, N. C. Index 2d, Appeal & Error, § 26. No error appears on the face of the record. In view of what has been said, there is no necessity of further discussion here.

The judgment of the Superior Court entered herein is
Affirmed.

CAMPBELL and MORRIS, JJ., concur.