JACK AUSTIN v. TIRE TREADS, INC., AND W. A. HAYS

No. 7425DC84

(Filed 5 June 1974)

Corporations § 13; Fraud § 12— action against corporate president —
   checks returned for insufficient funds — insufficient evidence of fraud
      In an action against the president of a corporation based on alleged fraud in the issuance of checks on behalf of the corporation which failed to clear the bank due to insufficient funds, plaintiff's evidence was insufficient for the jury where it showed that sufficient funds were in the corporation's bank account to cover the checks on the dates the checks were issued to and accepted by plaintiff and that sufficient funds were on hand so that the checks could have been honored on almost any day during the period covered by the transactions between the parties, and plaintiff failed to show when the checks were presented to the drawee bank and were returned for insufficient funds.

APPEAL by defendant from *Dale, District Court Judge,* 16 August 1973 Session of District Court held in BURKE County.

Plaintiff, Jack Austin, seeks to recover damages for fraud allegedly perpetrated by defendant W. A. Hays, the president of and a shareholder in Tire Treads, Inc., when he issued several checks which failed to clear the bank due to insufficient funds.

The checks were drawn on the corporate account in the First National Bank of Habersham County located in Cornelia, Georgia. Plaintiff also proceeded against the corporate defendant, Tire Treads, Inc. and secured a judgment against it which is not the subject of this appeal.

Plaintiff's evidence tended to show the following. On 19 July 1971, plaintiff who was in the business of selling recappable tire casings, sold Tire Treads, Inc. a load of tires and accepted a check for the amount of $980.00 in payment therefore. The check was signed by W. A. Hays. Printed on the check was "Tire Treads, Inc., W. A. Hays, Pres.—P. O. Box 477, Franklin, North Carolina 28734." Plaintiff stated that on 19 July 1971, he told defendant:

> "I am not the man that wants any bad checks, that if he could not write me a good check or give me the money, then I would pull my truck out and go away. He told me that he had never wrote a bad check yet."

On 27 July 1973, plaintiff sold another load of casings to Tire Treads, Inc. and was paid by a check in the amount of $962.00 similar to that already discussed. A third load of tires was sold to Tire Treads, Inc. on 6 August 1971. Plaintiff described the transaction as follows:

> "[H]e said he needed [the tires] bad so I unloaded the tires and picked up my check and he told me to send the check in and I don't know whether I got enough money to cover it or not until I get down there, and I said, 'O.K., I sure will.' "

Plaintiff then accepted a check for $772.00 signed by defendant. These checks were "put through" for collection on several occasions, but each time were returned marked insufficient funds.

Plaintiff and defendant stipulated as to the accuracy of bank records showing the balance at relevant times in the Tire Treads, Inc. account. The records were admitted into evidence and indicated that on 19 July 1971, the balance of the Tire Treads, Inc. account was $1,890.00, that on 27 July 1971 it was $7,342.51, and that on 6 August 1971 it was $795.06. An official at Austin's bank testified that "[f]rom looking at the ledger for some two months, it certainly shows that these checks could have been honored on almost every continuous day based upon the record."

Testifying as an adverse witness, defendant admitted knowing the business was in "bad financial" condition but stated that to his knowledge the checks in question were good when he wrote them. He also indicated that Tire Treads' problems resulted primarily from mismanagement by his predecessor. The firm was heavily indebted to the drawee bank and that bank had the power to, and frequently did, draw from the checking account to satisfy obligations due the bank. Defendant said he never knew in advance when the bank was going to exercise this privilege.

At the close of plaintiff's evidence, defendant moved for a directed verdict. The motion was renewed when defendant offered no evidence. Both motions were denied.

The jury found that defendant had fraudulently issued the checks in issue and fixed damages at $2,722.00 with interest.

Defendant appealed.

*John H. McMurray for plaintiff appellee.*

*Byrd, Byrd, Ervin & Blanton by Robert B. Byrd for defendant appellant.*

VAUGHN, Judge.

Defendant argues that his motion for a directed verdict should have been granted. We agree. Although personal liability may be imposed on a corporate officer for fraudulently misrepresenting a company's financial condition to one dealing with the company provided that party suffers a loss as a result of reliance on the misrepresentation involved, *see Mills Co. v. Earle,* 233 N.C. 74, 62 S.E. 2d 492, plaintiff failed to establish a *prima facie* case. Actionable misrepresentation consists of (1) a representation of a material fact, (2) which was false, (3) which was either known to be so by the defendant when it was made or which was made recklessly without any knowledge of its truth, (4) which was intended to induce reliance, and (5) which did induce reasonable reliance, (6) reliance which resulted in injury to plaintiff. *Cofield v. Griffin,* 238 N.C. 377, 78 S.E. 2d 131.

In writing the checks, defendant, in effect, represented that his funds on deposit at the drawee bank (First National Bank in Georgia) were adequate to cover them. *See Nunn v. Smith,*

270 N.C. 374, 154 S.E. 2d 497; *Auto Supply Co., Inc. v. Equipment Co., Inc.,* 2 N.C. App. 531, 163 S.E. 2d 510; 37 Am. Jur. 2d, "Fraud and Deceit," § 142, p. 194. It was thus incumbent upon plaintiff to offer, among other things, evidence from which it could be inferred that defendant issued the checks with insufficient funds to cover them, that is, plaintiff had to prove the falsity of defendant's representations. Ordinarily, falsity is evaluated at the time a representation is made or when it is acted upon by the plaintiff. *Childress v. Nordman,* 238 N.C. 708, 78 S.E. 2d 757. Plaintiff presented no evidence that, when issued, the checks were not covered by adequate deposits. In fact plaintiff introduced records of the drawee bank which demonstrate that on the dates the checks were issued to and accepted by plaintiff, sufficient funds were in defendant's Georgia bank account and that sufficient funds were on hand so that the checks could have been honored on almost any day during the period covered by the transactions between the parties. The record is silent as to when the checks were presented to the drawee bank in Georgia, showing only that they were returned for "insufficient funds." Plaintiff failed to show that the checks were not good when issued or collectable for a reasonable time after issuance. Defendant's motion for a directed verdict should have been allowed.

Reversed.

Judges CAMPBELL and MORRIS concur.