WILLIAM C. TEAGUE, Plaintiff v. CHARLES RANDALL ISENHOWER and the PARTNERSHIP, SIGMON, SIGMON and ISENHOWER, Defendants

No. COA02-788

(Filed 15 April 2003)

**Statutes of Limitation and Repose— legal malpractice—expiration of time limit**

The trial court did not err by dismissing under N.C.G.S. § 1A-1, Rule 12(b)(6) plaintiff's legal malpractice action arising out of the handling of plaintiff's equitable distribution and alimony claims attendant to plaintiff's divorce based on the expiration of the statute of limitations under N.C.G.S. § 1-15(c), because: (1) plaintiff's claim arising out of the alleged mishandling of the equitable distribution claim should have been filed by 22 May 2001, and it was filed on 12 October 2001; and (2) plaintiff's claim arising out of the alleged mishandling of the alimony claim should have been filed by 6 August 2001, and it was filed on 12 October 2001.

Appeal by plaintiff from order entered 23 April 2002 by Judge Claude S. Sitton, Superior Court, Burke County. Heard in the Court of Appeals 19 February 2003.

*Moore & Brown, by B. Ervin Brown, II, for plaintiff-appellant.*

*Eisele, Ashburn, Greene & Chapman, P.A., by Douglas G. Eisele, for defendants-appellees.*

WYNN, Judge.

By this appeal, plaintiff, William C. Teague, contends that the trial court erroneously dismissed his legal malpractice action under Rule 12(b)(6). We affirm the trial court's order of dismissal.

In December 1995, Mr. Teague retained defendants, Charles R. Isenhower and his law firm—Sigmon, Sigmon and Isenhower, to handle his divorce action. In October 1996, the trial court entered a judgment of divorce and left pending the equitable distribution, alimony and child support claims. In 1998, the trial court entered an equitable distribution judgment and alimony award in favor of Mrs. Teague. Through his attorney (Mr. Isenhower), Mr. Teague appealed the alimony award; ultimately, this Court affirmed the award in a decision filed on 30 December 1999. *See Teague v. Teague,* 136 N.C. App.

442, 529 S.E.2d 704 (1999). During the pendency of that appeal, Mrs. Teague moved for contempt against Mr. Teague alleging a failure to pay alimony; that motion resulted in the execution of a consent order by the trial court and the parties. Mr. Teague discharged Mr. Isenhower in January 2000.

In October 2001, Mr. Teague brought an action against Mr. Isenhower and his law firm alleging a failure to meet the standard of professional legal practice in the representation of Mr. Teague on the equitable distribution and alimony claims. He filed an amended complaint on 28 December 2001. From the trial court's dismissal of his action under Rule 12(b)(6), Mr. Teague appeals.

---

"An order granting a motion to dismiss is erroneous if the complaint, liberally construed, shows no insurmountable bar to recovery. Dismissal is generally precluded unless plaintiff can prove no set of facts to support the claim for relief. For purposes of a motion to dismiss, the allegations in the complaint must be treated as true, and the complaint is sufficient if it supports relief on any theory. Under the notice theory of pleading of our Rules of Civil Procedure a complaint should not be dismissed merely because it amounts to a 'defective statement' of a good cause of action." *Jenkins v. Wheeler*, 69 N.C. App. 140, 143, 316 S.E.2d 354, 356 (1984).

Plaintiff's amended complaint alleges defendants committed legal malpractice in their handling of the equitable distribution and alimony claims attendant to plaintiff's divorce.[1] In particular, plaintiff alleges defendants "failed to conduct formal discovery, when formal discovery was necessary and beneficial to plaintiff's case; failed to communicate with plaintiff in crucial matters, and to heed plaintiff on those occasions when there was communications; failed to diligently investigate the factual basis of the case; and failed to present evidence and claims beneficial to his client." As a result, plaintiff alleges he is entitled to damages in excess of $10,000.

The dispositive issue on appeal is whether the statute of limitations barred plaintiff's legal malpractice claims. "It is proper under a Rule 12(b)(6) motion to determine whether the applicable statute of limitations bars the plaintiff's claims if such bar appears on the face

---

1. Although plaintiff's complaint brings forth claims for breach of fiduciary duty and legal malpractice, a "breach of fiduciary duty claim is essentially a negligence or professional malpractice claim." *Childers v. Hayes*, 77 N.C. App. 792, 795, 336 S.E.2d 146, 148 (1985); *see also Heath v. Craighill, Rendleman, Ingle & Blythe*, 97 N.C. App. 236, 244, 388 S.E.2d 178, 183 (1990).

of the complaint." *State of North Carolina v. Petree Stockton, L.L.P.,* 129 N.C. App. 432, 440, 499 S.E.2d 790, 795 (1998). The statute of limitations applicable to this case is contained in N.C. Gen. Stat. § 1-15(c) (2001) which provides that actions for "malpractice arising out of the performance of or failure to perform professional services" must be brought within three years of the "accrual" of the cause of action. Specifically, N.C. Gen. Stat. § 1-15(c) provides:

> Except where otherwise provided by statute, a cause of action for malpractice arising out of the performance of or failure to perform professional services shall be deemed to accrue at the time of the occurrence of the last act of the defendant giving rise to the cause of action: Provided that whenever there is bodily injury to the person, economic or monetary loss, or a defect in or damage to property which originates under circumstances making the injury, loss, defect or damage not readily apparent to the claimant at the time of its origin, and the injury, loss, defect or damage is discovered or should reasonably be discovered by the claimant two or more years after the occurrence of the last act of the defendant giving rise to the cause of action, suit must be commenced within one year from the date discovery is made: Provided nothing herein shall be construed to reduce the statute of limitation in any such case below three years. Provided further, that in no event shall an action be commenced more than four years from the last act of the defendant giving rise to the cause of action. . . .

Thus, N.C. Gen. Stat. § 1-15(c) prescribes that a malpractice claim accrues "at the time of the occurrence of the last act of the defendant giving rise to the cause of action."

An analysis of plaintiff's complaint reveals the actions complained of refer to defendants' trial court representation of plaintiff on the equitable distribution and alimony claims.

### A. Equitable Distribution

In plaintiff's amended complaint, he alleges defendants:

42. . . . never issued subpoenas to financial institutions to investigate the claims of Wife that are reflected in the Pre-Trial Order in 95 CVD 1363 . . .;

43. . . . never made use of information provided to him by the Plaintiff regarding various payments Plaintiff made on marital debts for the benefit of Mrs. Teague;

44. . . . never filed an equitable distribution affidavit in 95 CVD 1363.

On 22 May 1998, the equitable distribution judgment was entered. Taking these allegations as true and assuming these allegations constitute a valid claim of legal malpractice, plaintiff's claim is nevertheless barred by the statute of limitations.

Indeed, the acts of negligence set forth by the plaintiff relate only to defendants' representation at the trial court level and plaintiff did not appeal from the equitable distribution judgment. Thus, the last act of defendants giving rise to a cause of action relating to defendants' equitable distribution representation occurred on 22 May 1998. By that date, plaintiff should have known defendants had allegedly failed to present certain information or challenge his ex-wife's evidence because of the findings of fact in the judgment. Accordingly, plaintiff's legal malpractice claim arising out of the alleged mishandling of the equitable distribution claim arose on 22 May 1998; therefore, any legal malpractice claim arising from defendants' trial court representation of plaintiff should have been filed prior to 22 May 2001. Since plaintiff filed his complaint on 12 October 2001, after the statute of limitations lapsed, we uphold the trial court's dismissal of his claims arising from the equitable distribution action.

### B. Alimony

In plaintiff's amended complaint, he alleges:

39. . . . Plaintiff advised Defendant Isenhower that Wife had agreed with Plaintiff that she would waive alimony in return for which Plaintiff had agreed he would not pursue his right to claim custody of the minor child of the parties, and child support;

48. . . . Prior to September 3, 1997, Plaintiff had provided Defendant Charles Randall Isenhower with allegations of fault against Wife in relation to her claim for alimony. More particularly, Plaintiff informed Isenhower that Wife had, for the past year, refused conjugal relations with him.

49. . . . Prior to September 3, 1997, Plaintiff had provided information regarding his financial status to Defendant Isenhower, in relation to Wife's claim for alimony;

50. . . . On information and belief, Defendant conducted no formal written discovery or depositions regarding the fault claims of Wife, as set forth in her Answer and Counterclaims;

51. . . . Defendant Isenhower never presented evidence of Plaintiff's ex-wife's agreement with Plaintiff not to seek alimony, nor did Isenhower ever file a motion for summary judgment on the issue of alimony based on said agreement;

52. . . . The judgment entered September 26, 1997, does not reflect that any evidence of fault on the part of Wife was presented by counsel for the Plaintiff at that hearing, including evidence of Wife having denied Plaintiff his conjugal rights for more than one year preceding the hearing. Upon information and belief, no such evidence was presented;

53. Defendant . . . did not appeal the Alimony Judgment entered September 26, 1997, nor did he seek to have the Judgment modified or amended, so that the Plaintiff's fault allegations could be considered and ruled upon by the court;

55. An Alimony Judgment was entered on August 6, 1998, there having been an Alimony Hearing on June 30 and July 1 of 1998;

56. At the June/July Alimony Hearing, Defendant Isenhower failed to present important evidence that would have demonstrated the ability of the Plaintiff to pay alimony to Defendant, and failed to investigate the resources of the Defendant. By way of example only, Defendant . . . left many portions of the form affidavit regarding Plaintiff's financial status blank, and did not inquire of Plaintiff as to information necessary to present his financial status properly to the court. Perhaps most importantly, largely due to the failure of defendant . . . to present evidence distinguishing Plaintiff's recurrent sources of income from withdrawals from Plaintiff's retirement accounts, the Court erroneously concluded that Plaintiff understated his income on his affidavit. This resulted in the Court concluding that Plaintiff's income was much greater than was actually the case;

57. A Notice of Appeal of the Alimony Judgment entered on July 1, 1998 was filed by Defendant Isenhower in July 1998, subsequent to the Hearing on Alimony, and prior to the entry of the Judgment in August.

In its 6 August 1998 alimony judgment, the trial court incorporated its 27 September 1997 judgment that "Plaintiff did willfully bring the parties cohabitation to an end without just cause or provocation. . . ." Taking plaintiff's allegations as true and again, assuming these alle-

gations constitute a valid claim of legal malpractice, plaintiff's claims arising from defendants' representation in the alimony action are nonetheless barred by the statute of limitations.

As with the legal malpractice claims relating to the equitable distribution action, the acts of negligence set forth by the plaintiff concerning the alimony action relate only to defendants' representation at the trial court level. Moreover, although defendants represented plaintiff in the appeal of the alimony award, plaintiff makes no contention that defendants failed to properly represent him in the appeal of his case. Thus, the last act of defendants giving rise to a cause of action relating to defendants alimony representation occurred on 6 August 1998. By that date, plaintiff should have been aware of defendants' failure to present accurate information regarding plaintiff's and his ex-wife's financial status. Since plaintiff filed his complaint on 12 October 2001, after the statute of limitation lapsed on 6 August 2001, we uphold the trial court's 12(b)(6) dismissal of his claims arising from the equitable distribution action.[2]

We have reviewed plaintiff's remaining arguments and find them to be without merit. Accordingly, the trial court's order dismissing plaintiff's cause of action is,

Affirmed.

Judges TIMMONS-GOODSON and HUDSON concur.

---

2. We note in passing that plaintiff argues this Court should adopt the continuous representation doctrine and apply it to the facts of this case. "Under this doctrine, the statute of limitations and the statute of repose do not accrue until the earlier of either the date the attorney ceases serving the client in a professional capacity with regard to the matters which are the basis of the malpractice action *or the date the client becomes aware or should become aware of the negligent act.*" *Sharp v. Teague*, 113 N.C. App. 589, 594, 439 S.E.2d 792, 795 (1994) (emphasis supplied).

Assuming without deciding that North Carolina recognizes the continuous representation doctrine, plaintiff's action is still barred by the statute of limitations. Although defendants were not discharged until January 2000, plaintiff became aware or should have become aware of the defendants' alleged negligent acts by 22 May 1998 and 6 August 1998 when the equitable distribution and alimony judgments were entered. By those dates, plaintiff should have known defendants had allegedly failed to raise certain defenses, present certain information, or challenge his ex-wife's evidence because of the findings of fact in the judgments.